IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CAPLAN,<br><br>      Plaintiff,<br><br>   v.<br><br>CNA SHORT TERM DISABILITY PLAN; CNA LONG TERM DISABILITY PLAN; HARTFORD LIFE GROUP INSURANCE COMPANY,<br><br>      Defendants.<br>_____/ | No. C 06-5865 CW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER AND TO AMEND COMPLAINT |

    Plaintiff David Caplan seeks to modify the current scheduling order and to amend the complaint to enable him to add two new parties and three new claims. Defendants Hartford Life Group Insurance Company (Hartford), CNA Long Term Disability Plan (LTD Plan) and CNA Short Term Disability Plan (STD Plan) oppose the motion. The matter is submitted on the papers and the hearing scheduled for June 7, 2007 is vacated. Having considered all of the papers filed by the parties, the Court grants Plaintiff's motion in part. The Court will modify the scheduling order to permit Plaintiff to add additional parties and claims; however, he

can add only his state law claims against CNA Financial Corporation.

## BACKGROUND

On February 23, 2005, Plaintiff filed a claim for short-term disability benefits. After Hartford denied his claim, Plaintiff submitted a request for review of the decision and submitted a claim for long-term disability benefits. Hartford referred Plaintiff's request for review to University Disability Consortium (UDC) for a comprehensive medical review of his claim. According to Plaintiff, however, UDC has a financial conflict of interest because its income is largely dependent on Hartford. Plaintiff requested that Hartford obtain a medical review from an evaluator more neutral. Hartford did not, nor did it respond directly to Plaintiff's letter requesting a different evaluator. Rather, it sent Plaintiff a letter, dated April 21, 2006, informing him that it upheld its decision to deny his claim for short-term benefits and, therefore, denied his claim for long-term benefits.

On September 22, 2006, Plaintiff filed his complaint in this action. In November, the parties filed a joint stipulation to allow Plaintiff to file a first amended complaint, in part because some Defendants had indicated that they would provide information to Plaintiff that "may suggest that Plaintiff should, depending on the content of that information, amend the complaint to bring concurrent state law claims against an additional defendant." Springer-Sullivan Dec., Ex. 1.

In December, STD Plan wrote to Plaintiff that ERISA was applicable and provided copies of pages from the summary plan

2

1  description.  After receiving that letter, Plaintiff filed his
2  first amended complaint, asserting two causes of action; but,
3  relying on STD Plan's representation that it was an ERISA plan, he
4  did not add any state law claims.  His first claim is for benefits
5  pursuant to ERISA § 502(a)(1)(B) under the terms of the STD Plan
6  and LTD Plan.  His second cause of action is for injunctive and
7  other equitable relief pursuant to ERISA § 502(a)(3) and is brought
8  only against Hartford.  According to Plaintiff, Hartford relied on
9  UDC's biased medical reviews, failed to provide a reasonable claim
10 procedure and, therefore, breached its fiduciary duties.  Plaintiff
11 seeks to enjoin Hartford from utilizing UDC as a medical reviewer
12 and to remove Hartford as a plan fiduciary.
13      In January, STD filed its answer, which alleged that it was an
14 ERISA plan.
15      Even after filing his first amended complaint, Plaintiff
16 continued to seek information from STD Plan that would show how the
17 plan was funded so that Plaintiff could determine whether his
18 claims were properly brought under ERISA.  Plaintiff requested
19 further information to verify the accuracy of the documents he had
20 received prior to filing his amended complaint.  STD Plan's counsel
21 assured Plaintiff's counsel more than once that she was working on
22 getting a declaration from STD Plan proving that it was an ERISA
23 plan whose benefits were funded through a trust.  Other than
24 assurances, however, Plaintiff received nothing until March 16,
25 2007.
26      On March 2, 2007, the Court held an initial case management
27 conference.  At the conference, the parties indicated that they did
28

3

1  not anticipate adding any additional parties or claims.  Plaintiff
2  did not mention that he was still in the process of seeking
3  additional information that could result in amending the complaint
4  to add new parties or claims.  The Court set March 2, 2007, as the
5  deadline to add additional parties or claims.  Plaintiff did not
6  request an extension of that deadline.

7  Two weeks later, Plaintiff received the Declaration of Julia
8  M. Cochrane Regrading ERISA Status of CNA Short Term Disability
9  Plan.  According to Plaintiff, this declaration shows that the STD
10 Plan is not an ERISA plan because payments under the plan are made
11 from the employer's general assets, not from the trust, which
12 reimburses the employer on a monthly basis.  See Springer-Sullivan
13 Dec., Ex. 5 at ¶ 4 ("STD benefits are paid to eligible participants
14 through the Continental Casualty Company payroll system.").

15 Plaintiff requested that, in light of the Cochrane
16 declaration, Defendants stipulate to the filing of an amended
17 complaint.  He sent a copy of the proposed second amended complaint
18 to Defendants.  The amended complaint seeks to drop STD Plan as a
19 defendant, to add UDC and CNA Financial Corporation (CNA) as
20 defendants and to add three new causes of action: two state law
21 claims against CNA and a unfair competition claim, under California
22 Business and Professions Code § 17200, against Hartford and UDC.
23 Defendants refused to stipulate and, approximately a week later,
24 Plaintiff filed this motion.

LEGAL STANDARD

26 Federal Rule of Civil Procedure 15(a) provides that leave of
27 the court allowing a party to amend its pleading "shall be freely

4

given when justice so requires." See, e.g., United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality"). The ability of a party seeking to amend a pleading after the date specified in a scheduling order, however, is governed by Rule 16(b), not Rule 15(a). Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). Thus, the party must first show "good cause" for the amendment under Rule 16(b) and, second, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. Id.

In order to determine good cause, courts primarily consider the diligence of the party seeking the modification. Id. at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). "Not only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999). A party seeking to amend a scheduling order must show that it had assisted the Court to create a workable schedule at the outset of litigation, that the scheduling order creates deadlines that have become impracticable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary. See id. at 608.

## DISCUSSION

The Court's deadline for amending the complaint to add parties or claims was March 2, 2007. Therefore, Plaintiff's motion is

5

governed by Federal Rule of Civil Procedure 16(b). Only if good cause can be shown does the Court consider whether amendment is proper under Rule 15. Defendants argue that Plaintiff's motion should be denied because good cause does not exist to modify the scheduling order and because, even if good cause does exist, Plaintiff's proposed amendments are futile.

I. Good Cause Under Rule 16(b)

According to Defendants, Plaintiff was not diligent. They point out that the unfair competition claim against Hartford and UDC is based on the same conduct alleged in the original and first amended complaints. Defendants further note that, by November, 2006, Plaintiff was aware that he may not have named everyone he wanted to sue; he was aware that he had potential state law claims against Defendants, yet he did not plead any of them in his first amended complaint. Rather, in that complaint, he alleged that the STD Plan was an employee welfare benefit plan within the meaning of ERISA. The parties' joint case management statement, filed before the initial case management conference, states that one of the legal issues the parties dispute is whether the STD Plan is subject to ERISA or instead is governed by state law. Nonetheless, Plaintiff neither plead state law claims in the alternative nor mentioned to the Court that state law claims may need to be plead after he received the requested information from STD Plan. See Jackson, 186 F.R.D. at 608 (noting that parties anticipating possible amendments to their pleadings have an obligation to alert the Rule 16 scheduling judge of the nature and timing of such anticipated amendments and that, if the plaintiff was aware of

6

circumstances that may require amendment and yet said nothing about them to the judge setting the scheduling order, such an omission would not be compatible with a finding of diligence).

Plaintiff should have mentioned to the Court at the initial case management conference that, depending on the information STD Plan supplied, he might amend his complaint to add additional parties and state law claims. In light of the circumstances in this case, however, the Court does not find that his failure to do so shows that he was not diligent.

Unlike in Johnson, where the court found that the plaintiff was not diligent and, thus, did not show good cause to amend the scheduling order, Plaintiff did not receive information from Defendants showing that amendment was necessary before the deadline to add additional parties or claims expired. See 975 F.2d at 609. As Plaintiff points out, he received repeated assurances from counsel that the STD Plan was governed by ERISA and that further documentation would support that assertion, not prove it false. STD Plan filed its answer, asserting that it was an ERISA Plan. Based on this record, and consistent with Rule 11 obligations, Plaintiff contends that he could not have alleged state law claims against STD Plan and that any unfair competition claim would have been preempted by ERISA.

Plaintiff continued diligently to seek information to verify that the STD Plan was an ERISA plan, as his counsel was repeatedly told. He did not, as Defendants suggest, wait passively until March 16, 2007, when he received the Cochrane declaration. After receiving the information, he did not, like the plaintiff in

7

Johnson, then wait an additional four months after the deadline had passed before seeking to amend the scheduling order and his complaint. See id. at 610. Plaintiff diligently pursued a stipulation to permit the filing of an amended complaint and, after that failed, he promptly filed this motion.

The Court concludes that Plaintiff has shown good cause to amend the scheduling order. Plaintiff, however, still must show that amendment is proper under Rule 15.

II. Futility Under Rule 15

Leave to amend lies within the sound discretion of the trial court, which discretion "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." Webb, 655 F.2d at 979; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). The Supreme Court has identified four factors relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962). The Ninth Circuit holds that these factors are not of equal weight; specifically, delay alone is insufficient ground for denying leave to amend. Webb, 655 F.2d at 980. Futility of amendment can, by itself, justify the denial of a motion for leave to amend; however, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, 845 F.2d 209, 214 (9th Cir. 1988) (citing Baker v. Pacific Far East Lines, Inc., 451 F. Supp. 84, 89 (N.D. Cal. 1978)); Bonin v. Calderon, 59

8

F.3d 815, 845 (9th Cir. 1995).

Defendants argue that, because the proposed amendments are futile, even under Rule 15's liberal policy, Plaintiff's motion to amend should be denied. STD Plan contends that it is an ERISA plan and, thus, the current ERISA claims against it are the proper vehicle for recovery of benefits, not Plaintiff's proposed state law claims. Hartford contends that Plaintiff lacks standing to assert a claim under California's Unfair Competition Act.

A. ERISA plan versus state-law governed payroll practice

ERISA regulates employee welfare benefit plans, such as short-term and long-term disability plans. As the Ninth Circuit explained in <u>Alaska Airlines, Inc. v. Oregon Bureau of Labor</u>, 122 F.3d 812, 812 (9th Cir. 1997), "A regulation of the Secretary of Labor, however, excludes certain 'payroll practices' from the application of ERISA." This regulation provides that an "employee welfare benefit plan" shall not include:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . . .

29 C.F.R. § 2510.3-1(b)(2).

Plaintiff contends that he discovered, through the Cochrane declaration, that the STD Plan is payroll plan, not an ERISA plan, and therefore, is governed by state law, not ERISA law. In her declaration, Ms. Cochrane states that, based on her knowledge and understanding, the STD Plan was established and is maintained as an ERISA plan. But she further explains that short-term disability benefits are paid to eligible participants through the Continental

9

1 Casualty Company payroll system, which is then reimbursed by CNA
2 Employees' Health Plan Trust.  Plaintiff claims that when
3 disability benefits are paid, not by a trust or an insurance
4 company, but rather by the employer, the employee's expectation of
5 receiving benefits depends on the solvency of the employer, not the
6 solvency of a trust, and ERISA can offer no protection.  See
7 Bassiri v. Xerox, 463 F.3d 927 (9th Cir. 2006) (noting the
8 importance of the source of funding as a distinguishing feature
9 between ERISA plans and non-ERISA plans throughout Department of
10 Labor regulation).

11     STD Plan responds that this Court rejected Plaintiff's payroll
12 practice theory in Air Transport Association v. City and County of
13 San Francisco, 992 F. Supp. 1149, 1180 (1998).  That case, however,
14 did not analyze whether a particular plan fell within the payroll
15 practice exemption and STD Plan's reliance on it is misplaced.  STD
16 Plan further argues that a plan does not become a non-ERISA payroll
17 practice merely because a benefit is provided by an employer who is
18 then reimbursed by the trust funding the plan.  That is true; the
19 Department of Labor instructs that, in determining whether a plan
20 is an employee welfare benefit plan, many other factors must be
21 evaluated including whether the trust is a bona fide separate fund,
22 whether the trust has the direct legal obligation to pay benefits
23 under the plan, whether there is a contribution obligation
24 enforceable against the employer and whether contributions are
25 actuarially determined, established through collective bargaining
26 or otherwise bear a relationship to the plan's accruing liability.
27 The Cochrane declaration does not address all of those factors.

10

As explained above, a proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid and sufficient claim. Based on the record before it, the Court cannot conclude that the proposed amendment is futile. Therefore, Plaintiff will be allowed to amend his complaint to include state law claims against CNA and to drop his ERISA claims against STD Plan.[1]

B.  Standing and Plaintiff's Proposed Unfair Competition Claim

Article III standing requires (1) injury, (2) causation and (3) redressability. In the context of injunctive relief, which Plaintiff seeks pursuant to his unfair competition claim, "'the plaintiff must demonstrate a real or immediate threat of an irreparable injury.'" Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1021-22 (9th Cir. 2004) (emphasis in original) (quoting Clark v. City of Lakewood, 259 F.3d 996, 1007 (9th Cir. 2001)).

Hartford argues that, like the plaintiff in Hangarter, Plaintiff has no Article III standing to pursue injunctive relief under California's Unfair Competition Act. In Hangarter, the court concluded that the plaintiff did not have a real or immediate threat of injury and ordered the district court to vacate the injunction it granted under the Unfair Competition Act. There, the plaintiff's entire disability policy had been cancelled and thus

---

[1] Because the Court is not ruling whether the STD Plan is a ERISA plan or a payroll plan, Plaintiff may want to plead in the alternative and to keep STD Plan, and its ERISA claims against STD Plan, in this case. Plaintiff then would not have to seek leave to amend its complaint if the Court determines that the STD plan is an ERISA plan.

11

she had no current contractual relationship with the defendants and could not be personally threatened by the defendants' conduct. 373 F.3d at 1022. Here, if Plaintiff is granted disability benefits, he will continue to have a relationship with Hartford, but he will have no contractual relationship with the STD Plan. It is undisputed that Plaintiff's short-term disability benefits are limited to the period of March 7, 2005 through August 28, 2005. Therefore, Hartford contends that there can be no possibility of future harm to Plaintiff from any alleged unlawful business plans relating to his short-term disability benefits because that time has passed.

Plaintiff's response is not persuasive. It distinguishes the circumstances here by noting that, unlike in Hangarter, Plaintiff here would continue to have a relationship with Hartford. That distinction, however, is not meaningful because Plaintiff has not demonstrated a real or immediate threat of injury from Hartford or UDC as it relates to his short-term benefits. Plaintiff will remain at risk of Hartford obtaining another allegedly biased medical opinion from UDC and using that as a basis for terminating his long-term disability benefits. But, if this Court finds that short-term benefits should have been awarded, nothing Hartford or UDC do can take away those benefits, which are limited to a time that has passed. Plaintiff has Article III standing to bring ERISA claims against Hartford with respect to long-term benefits, but he does not have Article III standing to bring his unfair competition state law claim against Hartford with respect to short-term benefits.

12

The Court concludes that an unfair competition claim against Hartford and UDC would be futile and the Court will not grant Plaintiff leave to add that claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Modify Scheduling Order and to Amend Complaint (Docket No. 43) is GRANTED IN PART and DENIED IN PART.  The Court will modify the scheduling order: the deadline for Plaintiff to add additional parties or claims is extended and Plaintiff must add any additional parties or claims within five days from the date of this order.  The Court grants Plaintiff leave to file his amended complaint with respect to his two state law claims against CNA, but denies leave with respect to Plaintiff's proposed unfair competition claim under California Business and Professions Code § 17200.  If he wants to redraft his proposed amended complaint to plead in the alternative and not to drop STD Plan as a defendant, he may do so.

The remaining dates set forth in the scheduling order are not vacated.  If necessary, CNA can seek to stipulate to modify the scheduling order or it can move for such relief.

IT IS SO ORDERED.

Dated: 6/1/07

CLAUDIA WILKEN
United States District Judge