IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CAPLAN,<br><br>            Plaintiff,<br><br>     v.<br><br>CNA FINANCIAL CORPORATION; CNA SHORT TERM DISABILITY PLAN; CNA LONG TERM DISABILITY PLAN; and HARTFORD LIFE GROUP INSURANCE COMPANY,<br><br>            Defendants.<br>_____/ | No. C 06-5865 CW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR JUDGMENT AND GRANTING IN PART DEFENDANTS' CROSS-MOTION FOR JUDGMENT |

     Plaintiff David Caplan moves for judgment on his claims for long-term disability benefits and injunctive relief under the Employee Retirement Income Security Act (ERISA).  Defendants Hartford Life Group Insurance Company (Hartford) and CNA Long-Term Disability Plan cross-move for judgment on these claims.[1]  The matter was heard on March 13, 2008.  Having considered oral argument and all of the materials submitted by the parties, the Court grants each party's motion in part.  In addition, Plaintiff's claim for long-term disability benefits is remanded in part to

---

     [1]The remaining defendants are no longer parties to this action.

1 Hartford for further proceedings.

## FINDINGS OF FACT

I.  Plaintiff's Employment

Plaintiff began working as a vocational case manager for CNA Financial Corporation in late 1999 or early 2000.  In this position, he managed the cases of workers' compensation claimants, reviewing and monitoring their eligibility for vocational rehabilitation.  His duties involved sending notices, generating forms, talking to claimants or their attorneys while taking notes, writing position statements for workers' compensation hearings and attending those hearings, and evaluating the ergonomics of workers' jobsites.

Plaintiff initially conducted field visits for approximately one and one-half days per week.  He spent the rest of his time at his desk, usually for eight hours each day.  In 2003, a reduction in available field work caused Plaintiff to start spending more time at the computer.  Plaintiff's workload also increased.  As a result, Plaintiff began spending eight to eleven hours per day at the computer.

II. Plaintiff's Injury

In 1988, before he began working for CNA, Plaintiff injured his lumbar spine while trying to move a 600-pound motor.  His injury ended his career as an electrician, and he continues to experience chronic lower back pain today.  In 1998 -- also before he began working for CNA -- Plaintiff injured the ulnar nerve in his right arm.  This injury continues to prevent Plaintiff from writing for long periods of time.

2

In 2003, Plaintiff injured his cervical spine as a result of performing large amounts of computer work. His injury caused him to experience pain and muscle spasms in his shoulders and upper back. At the same time, he began experiencing problems with his hands due to constant keyboarding.

Plaintiff attempted to use voice recognition software in order to reduce the amount of time he spent keyboarding, but the software was incompatible with his need to speak with people while taking notes, and did not allow him to work effectively within the specific programs he used. Additionally, even with the reduced amount of keyboarding, Plaintiff's back, neck and shoulder pain prevented him from being able to spend a full day sitting at the computer in a static posture.

Plaintiff attempted to perform his normal duties, working through his pain and taking prescription painkillers such as Vicodin and Tramadol. Eventually, however, the pain became too severe for him to continue working without accommodations. In February, 2004, at the advice of his doctor, Plaintiff was limited to three hours of typing a day. His employer attempted to accommodate this restriction by assigning him to more field visits. However, there was not enough field work to keep Plaintiff occupied full-time, and his productivity declined. In February, 2005, Plaintiff's supervisor advised him that she was no longer able to accommodate the reduced number of hours Plaintiff was billing. In addition, Plaintiff's doctor had recently advised him to restrict himself to three hours of work each day. CNA was not able to grant Plaintiff's request for such an accommodation. Accordingly,

3

Plaintiff was terminated on or about March 1, 2005.

III. The STD and LTD Plans

CNA maintains both a short-term disability plan (the STD Plan) and a long-term disability plan (the LTD Plan) for its employees. The STD Plan is self-insured by CNA, and the LTD Plan is insured by Hartford. Hartford is the claims administrator for both plans.

The STD Plan provides benefits for up to twenty-six weeks for employees who are temporarily disabled. An employee is considered disabled if he or she is "continuously unable to perform the Material and Substantial duties of the covered your [sic] Regular Occupation" and is "not working for wages in any occupation for which the Employee is or becomes qualified by education, training or experience." Hasselman Dec. Ex. 33 at STDPLAN0081-82. Alternatively, an employee may be considered disabled if "an Injury or Sickness is causing physical or mental impairment to such a degree of severity that [he or she is] unable to earn more than 80% of [his or her] Monthly Earnings in any occupation for which [he or she is] qualified by education, training or experience." Id. at STDPLAN0082.

The LTD Plan provides benefits in the event that an employee's disability extends beyond the twenty-six-week period covered by the STD Plan. For the first twelve months of LTD benefits, the Plan applies a definition of disability identical to the definition in the STD Plan. After the first twelve months of LTD benefits, however, the Plan applies a different definition of disability. Under this definition, an employee must be "continuously unable to engage in any occupation for which [he or she is] or become[s]

4

qualified by education, training or experience," and must not be "working for wages in any occupation for which [he or she] become[s] qualified by education, training or experience." Id. at STDPLAN0089.  Thus, for the first twelve months of benefits, an employee must merely show that he or she is unable to perform the duties of his or her <u>own occupation</u>, whereas after the first twelve months of benefits, the employee must show that he or she is unable to perform the duties of <u>any suitable occupation</u>.  In addition, as with the STD Plan, the LTD Plan also provides an alternative definition of disability.  Under this alternative definition, benefits are available if "an Injury or Sickness is causing physical or mental impairment to such a degree of severity that [an employee is] unable to earn more than 80% of [his or her] Monthly Earnings in any occupation for which [he or she is] qualified by education, training or experience." Id.

III. Plaintiff's Claim for STD Benefits

Just prior to his termination on March 1, 2005, Plaintiff applied for STD benefits under the Plan.[2]  He provided medical documentation to support his claim.  This documentation included an August, 2004 report written by Dr. Robert E. Markison, an examining physician.  The report addressed the injury to Plaintiff's upper extremities.  Dr. Markison found that Plaintiff exhibited abnormal hyperextension of the ring and little fingers in his right hand, which was the "product of cumulative trauma-associated volar plate

---

[2] The record apparently does not contain a written claim, but Hartford sent Plaintiff a letter acknowledging receipt of his claim on February 24, 2005.

5

laxity without sublaxation of joints." Macko Dec. Ex. B at AR0587. As a result, Plaintiff's hand function was impaired. Dr. Markison concluded that Plaintiff should be "precluded from hands-on keyboard/mouse use for greater than three hours per day on a prophylactic basis in order to avoid worsening of the condition." Id.

Plaintiff also submitted workers' compensation reports from his treating physician, Jerel Glassman. Dr. Glassman rated Plaintiff's injuries as permanent and stationary, and stated that Plaintiff was limited in his functional capacity and should be restricted to no more than fifteen minutes of computer work at a time, followed by a five to ten minute break. Id. at AR0764. Dr. Glassman also stated that Plaintiff was unable to sit for more than thirty minutes to one hour at a time. Id. In a letter dated January 18, 2005, Dr. Glassman further stated that Plaintiff had "lost approximately 75% of his work capacity. Before his injury, he was working ten to twelve hours per day; he can now work three hours per day." Id. at AR0768.

Prior to issuing a decision on Plaintiff's claim, Hartford asked Reed Review Services (RRS) to review Plaintiff's medical records. On July 1, 2005, Dr. Philip Marion, a physician associated with RRS, prepared a report. Dr. Marion found that the records reflected degenerative spine disease, but he found no support for Dr. Glassman's three hour work day limitation. Id. at AR0777. Instead, Dr. Marion concluded that Plaintiff should be limited to twenty minutes of continuous typing with a five minute break, and limited to one hour of continuous sitting with a five

6

minute break and the ability to stand and stretch as needed. Id.

Hartford also contacted Plaintiff's supervisor, Patricia Nunez, who stated that CNA had attempted to accommodate Plaintiff's keyboarding restriction by assigning him all of the office's field visits. However, CNA was unable to accommodate a three-hour per day overall work restriction.

On July 13, 2005, Hartford sent Plaintiff a letter denying his claim for short term disability benefits. Hartford acknowledged that although some restrictions, including an inability to do continuous typing and continuous sitting without breaks, were supported by Plaintiff's medical records, CNA was able to accommodate these restrictions. Therefore, it stated, these limitations did not prevent Plaintiff from performing the material and substantial duties of his occupation as a vocational case manager. Id. at AR0273-74. Hartford stated that it found no evidence to support a finding that Plaintiff's condition had worsened to the point where he was unable to work for more than three hours a day.

IV. Plaintiff's Appeal

On February 27, 2006, Plaintiff appealed Hartford's decision denying his claim for STD benefits. His appeal stated that he was "simultaneously request[ing] approval of his claim for Long-Term Disability ("LTD") Benefits." Id. at AR0295.

As part of his appeal, Plaintiff submitted additional medical records as well as letters from his treating physicians and declarations from himself and friends who were familiar with his injury. He also submitted the reports of a three-day work

7

tolerance screening (WTS) and a functional capacity evaluation (FCE) performed by the Center for Career Evaluations.  These reports concluded that Plaintiff was not capable of full-time work in a sedentary position.  See Hasselman Dec. Ex. 21.

Hartford referred Plaintiff's claim to University Disability Consortium (UDC) for a second review of the file.  The reviewing physician, Suresh Mahawar, produced a report based on his evaluation of Plaintiff's medical records and other supporting documentation.  He did not examine Plaintiff.  Dr. Mahawar stated in his report that there were no "objective clinical findings such as disuse muscle atrophy or neurological deficit justifying the degree of restrictions" suggested by Plaintiff's physicians.  Macko Dec. Ex. B at AR0011.  Dr. Mahawar thus believed that "cumulative trauma disorder of [Plaintiff's] upper extremity could be managed on sound medical grounds by putting restrictions such as no using of keyboard or typing for over one hour at a time without a break of 15 minutes.  Restricting one to three hours in a day without any objective clinical back up is unreasonable and unnecessary (without presence of disuse muscle atrophy or neurological deficit)."  Id. at AR0012.  Dr. Mahawar acknowledged that Plaintiff's colleagues and treating physicians "feel that he is incapable of working in a sedentary job on a full time basis," but he dismissed this as "speculation" because it was "based on subjective symptoms only and without clinically objective findings."  Id.  Dr. Mahawar stated that if Plaintiff's pain "was really disabling, he would have clinical notable muscle atrophy in his upper and lower extremities. Therefore, he should have the capacity to work in a sedentary job

8

on a full-time basis." Id. at AR0012-13.

On April 21, 2006, Hartford denied Plaintiff's appeal, upholding its previous decision that Plaintiff was ineligible for STD benefits. Even though the denial letter stated that Hartford's decision was "based on the totality of the medical information provided," the only explanation for the denial was Dr. Mahawar's opinions. Id. at AR0003. The letter adopted Dr. Mahawar's view that Plaintiff "has the physical functionality to perform primarily sedentary duties with no lifting greater than 10 pounds, occasional standing and walking, and a 15 minute break after keyboarding for 45 minutes." Id. The letter also repeated Dr. Mahawar's opinion that if Plaintiff's pain "was of such severity that it would be considered disabling, he would have notable muscle atrophy in his upper and lower extremities." Id.

Plaintiff filed this lawsuit originally seeking both STD and LTD benefits under the Plan. He subsequently settled his claim for STD benefits, and now asserts only a claim for LTD benefits.

V. University Disability Consortium

UDC provides review services to Hartford pursuant to a contract. As of February, 2006, close to seventy-five percent of UDC's revenue was derived from Hartford. UDC initially charged $300 per hour for its physicians to review disability files, but its hourly charge to Hartford under a 2002 contract was reduced to $225 per hour in what UDC owner Jonathan Strang described as a "volume discount type arrangement." Id. at AR0072. UDC's gross revenue increased between fifty and one hundred percent from 2002 to 2004 after it signed its contract with Hartford. Id. at AR0181.

9

Since 2002, Hartford has paid UDC more than thirteen million dollars for review services. Hasselman Dec. Ex. 37 at 4.

UDC's marketing material for its independent medical evaluation services states:

> Disability claims continue to grow for many reasons; [sic] increased supply of benefits with supply chasing demand; increased compensability of many situations and conditions; erosion of the work ethic; increased social acceptability of disability status and a broadening of the situations and conditions claimed to be disabling, such as an increase of "new" or more complex cases.

Id. at AR0238. While UDC promises "impartial and objective disability evaluations," it also promotes a focus on "objective signs or impairments" and a de-emphasis on "subjective or self-report factors." Id. at AR0238-39.

Dr. Mahawar has performed chart reviews for UDC on a number of occasions, producing 217 evaluations for 202 Hartford claimants between January 1, 2005, and September 30, 2007. A summary of Dr. Mahawar's findings demonstrates that, of these 202 claimants, he found that 193 of them were capable of working full-time in some type of position under appropriate restrictions. See Hasselman Dec. Ex. 3.

In a phone conversation with Dr. Glassman about Plaintiff's disability claim, Dr. Mahawar stated his belief that anybody can work in a sedentary occupation. Id. Ex. 30 at P1135. He also expressed his view, which is reflected in his report, that only objective findings such as atrophy are acceptable indications of disability.

CONCLUSIONS OF LAW

I.  Standard of Review

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, each of the parties moves for judgment in its favor on Plaintiff's ERISA claims.  Under Rule 52, the court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true.  Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094-95 (9th Cir. 1999).

The standard of review of a plan administrator's denial of ERISA benefits depends upon the terms of the benefit plan.  Absent contrary language in the plan, the denial is reviewed under a de novo standard.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  However, if "the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms," an abuse of discretion standard is applied.  Id. at 102.  Under this standard, the administrator's decision will be upheld if is reasonable and supported by substantial evidence in the administrative record as a whole.  McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310, 1316-17 (9th Cir. 1994).

Here, there is no dispute that the Plan confers discretion upon Hartford.  Plaintiff asserts, however, that the Court should nonetheless conduct de novo review.  He notes that under Abatie v. Alta Health & Life Insurance Co., 458 F.3d 955 (9th Cir. 2006) (en banc), violations of ERISA procedure that are "so flagrant as to alter the substantive relationship between the employer and

11

employee" will result in de novo review notwithstanding the plan's grant of discretionary authority to the administrator. Id. at 971.

Hartford's purported violation of ERISA procedure was its "failure to acknowledge or address" Plaintiff's request for LTD benefits. This request, however, was contained in his appeal of Hartford's denial of his claim for STD benefits. Plaintiff never filed an independent claim for LTD benefits, and thus Hartford had no obligation to render a separate decision on such a claim. Moreover, for the first twelve months of LTD benefits, the definition of disability is identical under both the STD and the LTD plan.[3] Thus, Hartford's decision on Plaintiff's appeal was tantamount to a determination that he was not eligible for LTD benefits.[4] Because Hartford did not commit a flagrant violation of ERISA procedures, there is no basis to apply de novo review.

Plaintiff argues in the alternative that, even if de novo review does not apply, the circumstances call for a highly skeptical review of Hartford's decision. This argument is based on Abatie's holding that, in situations where "a plan administrator

---

[3]At the time Hartford rendered its decision, even if Plaintiff's claims had been approved, he would not yet have exhausted his first twelve months of LTD benefits.

[4]Defendants argue that the Court should not entertain Plaintiff's claim for LTD benefits because he did not properly submit a claim for such benefits or appeal the denial of any such claim. While the procedures followed by both Plaintiff and Hartford were somewhat irregular, the fact remains that Plaintiff fully appealed the denial of his claim for STD benefits and notified Hartford that he sought LTD benefits as well. Hartford had an opportunity fully to consider the issues presented on Plaintiff's appeal. Because the relevant definitions of disability under the STD Plan and the LTD Plan are identical, the Court deems Plaintiff's claim for LTD benefits to be fully exhausted.

12

denies benefits and (1) the wording of the plan confers discretion on the plan administrator and (2) the plan administrator has a conflict of interest," a court should apply an "abuse of discretion review, tempered by skepticism commensurate with the plan administrator's conflict of interest." Id. at 959.  To determine the level of skepticism to apply when a conflict exists, a court must consider "all the facts and circumstances." Id. at 968.  As the court explained:

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.  A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

Id. at 968-69.

Like the defendant in Abatie, Hartford operates under a structural conflict of interest: it is both the Plan administrator and the funding source for benefits paid under the Plan.  As the Ninth Circuit stated, "such an administrator has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers." Id. at 966.

In addition, Hartford's structural conflict of interest is accompanied by its reliance on UDC, a company which Hartford knows benefits financially from doing repeat business with it, collecting more than thirteen million dollars from Hartford since 2002.  It

13

follows that Hartford knows that UDC has an incentive to provide it with reports that will increase the chances that Hartford will return to UDC in the future -- in other words, reports upon which Hartford may rely in justifying its decision to deny benefits to a Plan participant.  UDC's marketing material also suggests that it offers insurers and plan administrators services that will support a parsimonious approach to administering claims.

Dr. Mahawar also stood to benefit financially from the repeat business that might come from providing Hartford with reports that were to its liking.  The history of Dr. Mahawar's conclusions provides evidence of this conflict; it demonstrates that he has provided Hartford with reports that frequently support a decision to deny benefits to the claimant.

Because Hartford's reliance on these apparently biased sources casts serious doubt on the neutrality of its decision-making process, the Court will view the decision with commensurate skepticism.

II.  Plaintiff's Claim for Disability Benefits

Pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Plaintiff seeks LTD disability benefits under the Plan.  This statute allows a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Id.

Defendants argue that Hartford's decision to terminate Plaintiff's benefits must be upheld because the decision does not represent an abuse of Hartford's discretion, considering the

14

administrative record as a whole.  Plaintiff argues, to the contrary, that the record clearly demonstrates that he is totally disabled, and that Hartford's decision was not supported by substantial evidence.

In its letter denying Plaintiff's claim for benefits, Hartford stated that its decision was based on "the totality of the medical information provided."  Nonetheless, Hartford's only justification for the denial was Dr. Mahawar's report.  Relying exclusively on Dr. Mahawar's opinion, Hartford stated that there were no objective medical findings to support the conclusion that Plaintiff was disabled.  Hartford did not discuss any of the evidence that Plaintiff submitted.

As discussed above, the reliability of Dr. Mahawar's report as a neutral evaluation of Plaintiff's condition is dubious, given that it was in UDC's and Dr. Mahawar's interest to provide Hartford with a report that would justify denying benefits to Plaintiff.  Additionally, the report itself shows a total disregard for the conclusions of Plaintiff's treating physicians and for Plaintiff's subjective reports of pain.  While the Court will not evaluate the accuracy of Dr. Mahawar's conclusion that, if Plaintiff's condition "was really disabling, he would have clinical notable muscle atrophy in his upper and lower extremities," the Court nonetheless notes that Plaintiff's treating physicians were not in agreement on this point.

In adopting Dr. Mahawar's conclusion, Hartford discounted a wealth of evidence that Plaintiff was not able to perform the duties of his occupation.  While some of this evidence was based on

15

1 Plaintiff's subjective reports of pain and the observations of
2 people familiar with Plaintiff's injury, there was also objective
3 evidence of Plaintiff's condition, including the results of the
4 WTS/FCE and the results of multiple MRIs.  See Hasselman Dec. Exs.
5 12, 13, 21.  Moreover, Hartford's approach of disregarding
6 subjective evidence of pain is disapproved in Ninth Circuit
7 precedent.  See Saffon v. Wells Fargo & Co. Long Term Disability
8 Plan, 511 F.3d 1206, 1216 (9th Cir. 2008) (noting that "individual
9 reactions to pain are subjective and not easily determined by
10 reference to objective measurements"); Fair v. Bowen, 885 F.2d 597,
11 601 (9th Cir. 1989) ("[D]espite our inability to measure and
12 describe it, pain can have real and severe debilitating effects; it
13 is, without a doubt, capable of entirely precluding a claimant from
14 working.  Because pain is a subjective phenomenon, moreover, it is
15 possible to suffer disabling pain even where the degree of pain, as
16 opposed to the mere existence of pain, is unsupported by objective
17 medical findings.").[5]  And while Defendants are correct that
18 Hartford need not "accord special weight to the opinions of a
19 claimant's physician," Hartford nonetheless may not "arbitrarily
20 refuse to credit a claimant's reliable evidence, including the
21 opinions of a treating physician."  Black & Decker Disability Plan
22 v. Nord, 538 U.S. 822, 834 (2003).

---

[5] Defendants suggest that Plaintiff's credibility has been tarnished because he was able to take a vacation to India while Hartford was processing his claim.  Hartford argues that this provides a reason for discounting Plaintiff's subjective reports of pain.  This argument is not convincing because there is no evidence that, except during his flight, Plaintiff spent eight hours a day sitting or keyboarding during his vacation.  Therefore, his vacation is not inconsistent with his reports of pain.

16

The Court concludes that it was an abuse of discretion for Hartford to give conclusive weight to Dr. Mahawar's report, given its unreliability as a neutral evaluation of Plaintiff's condition. The Court therefore finds that Plaintiff is eligible for twelve months of LTD benefits. However, Hartford has not yet determined whether Plaintiff has met the higher standard for LTD benefits after the first twelve months. Accordingly, Plaintiff's claim for more than twelve months of LTD benefits is remanded to Hartford so that it can render a decision on this claim.

III. Plaintiff's Claim for Breach of Fiduciary Duty

Plaintiff claims that, by using UDC (and Dr. Mahawar in particular), Hartford breached its duties as the Plan's fiduciary, thereby violating § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). This section permits a plan participant to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." On this claim, Plaintiff requests an injunction prohibiting Hartford from using UDC as a medical record reviewer for five years, as well as removal of Hartford as the Plan's fiduciary for five years.

In Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), the Supreme Court held that 29 U.S.C. § 1132(a)(3) authorizes ERISA beneficiaries to bring lawsuits for "'appropriate' equitable relief" for breach of fiduciary obligations where ERISA does not "elsewhere provide[] adequate relief for a beneficiary's injury."

17

It is expected "that courts, in fashioning 'appropriate' equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others." Id. (citations and quotations omitted). Thus, it is expected "that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. Section 1132(a)(3) is "a 'catchall' provision, which provides relief only for injuries that are not otherwise adequately provided for." Forsythe v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997) (citing Varity, 516 U.S. at 512)). The Ninth Circuit interpreted Varity to mean that equitable relief is not appropriate where another subsection of § 1132(a) provides an adequate remedy. Forsythe, 114 F.3d at 1475.

In a previous order denying Defendants' motion for summary judgment, the Court declined to determine at that early juncture whether an award of benefits under § 1132(a)(1)(B) would be an adequate remedy, or whether the injunctive relief Plaintiff seeks is available. Now, on a fuller record, the Court finds that § 1132(a)(1)(B) provides Plaintiff with an adequate remedy. Plaintiff has not shown that he or other Plan participants stand to face irreparable harm if injunctive relief is not granted; section 1132(a)(1)(B) will continue to provide all Plan participants, including Plaintiff, with the opportunity to challenge Hartford's wrongful denial of benefits.

In any event, an injunction prohibiting Hartford from

18

1 contracting with UDC or removing Hartford as the Plan's
2 administrator would not be appropriate under the circumstances.
3 Plaintiff has cited no case in which a court has granted such far-
4 reaching injunctive relief under circumstances similar to those
5 here.  While several aspects of UDC's relationship with Hartford
6 are troubling, there will always be some degree of conflict when an
7 independent company is paid to review medical records for a claims
8 administrator.  While Plaintiff has shown that the conflict in this
9 case is great enough to warrant skeptical treatment of Dr.
10 Mahawar's report, he has not shown that it is so great as to
11 warrant an injunction preventing Hartford from contracting with
12 UDC.  Nor has Plaintiff shown that Hartford's use of UDC is a
13 breach of fiduciary duty of the magnitude that would call for
14 Hartford's removal as claims administrator.  Accordingly,
15 Plaintiff's claim for injunctive relief under § 1132(a)(3) must be
16 denied.

## CONCLUSION

18     For the foregoing reasons, Plaintiff's motion for judgment is
19 GRANTED IN PART and DENIED IN PART; Defendant's cross-motion for
20 judgment is also GRANTED IN PART and DENIED IN PART.  Defendants
21 are ordered to pay Plaintiff twelve months of long-term disability
22 benefits, beginning on the date his short-term disability benefits
23 would have expired if they had been approved in the first instance.
24 Plaintiff's claim for additional long-term disability benefits is
25 REMANDED to Hartford for further proceedings consistent with this
26 order.  Plaintiff's claim for injunctive relief under 29 U.S.C.
27 § 1132(a)(3) is DENIED.  The case will be administratively closed

pending Hartford's decision.  It may be reopened at either party's request, at which time final judgment may be entered.

  IT IS SO ORDERED.

Dated: 4/4/08

             */s/ Claudia Wilken*
             CLAUDIA WILKEN
             United States District Judge